Last case this morning is Make The Road States against Frederick, I don't know if it's Harran or Harran Mr. Zim along we'll hear you whenever you're ready Good morning, may it please the court, Wally Zim along for the appellants Frederick A. Harran individually and Daniel L. Seisler in his official capacity as Sheriff of Bucks County. I would like to reserve two minutes for rebuttal.  Appellees filed this action in state court against former Bucks County Sheriff Frederick A. Harran seeking to terminate an agreement Sheriff Harran executed with the Department of Homeland Security under Section 287G of the Immigration and Nationality Act. That agreement empowered Sheriff Harran to conduct certain federal immigration law enforcement functions pursuant to the direction and supervision of DHS and ICE. Appellees also sought to enjoin Sheriff Harran and his deputies from conducting federal immigration law enforcement functions pursuant to that agreement. Sheriff Harran removed that case to the district court under 28 U.S.C. 1442A the Federal Officer of Removal Statute. The district court disagreed with Sheriff Harran's basis for removal under the Federal Officer of Removal Statute and remanded the matter back to state court. And it also awarded appellees attorney's fees under 28 U.S.C. 1447C because in its opinion Sheriff Harran lacked no objectively reasonable basis for removal under the Federal Officer of Removal Statute. So ordinarily if we have an appeal for unquantified attorney's fees we have no jurisdiction over that, right? I disagree, Your Honor. I believe that if the and I know this court would like to address jurisdiction. I was just going to get to that. This court does have jurisdiction. The appellees are arguing that because the attorney's fees are as yet unquantified this court lacks jurisdiction. But as the Supreme Court made clear in Budinich and this court has made clear multiple times including Gleason and Corpro, when an award of attorney's fees as here is entered pursuant to a federal statute, the unquantified amount of those fees does not divest the court of jurisdiction. The reason for that is because an award of attorney's fees to a prevailing party under a federal statute is not part of the merits of the underlying case. But doesn't Budinich – Budinich permits the appeal on the merits issues to go forward and carved out the unquantified attorney's fee award. Do you have cases that are closer to this situation where you're asking us to review – like what's left in this appeal is a non-final fee award? Well, it's not final only as to the amount. The appellees are arguing that it's not final because the court can't determine the reasonableness of the award. But do you have a case – the question is do you have a case where the court or this court exercises jurisdiction and analyzes entitlement to fees without having the actual fee granted? You know, I don't, Your Honor. Now, granted, this issue of jurisdiction only on the issue of entitlement to a fees just came up less than a week ago. So I haven't been able to do a complete and thorough examination of all circuits from – it is somewhat novel in the regard that had we maintained the appeal of the underlying merits of the remand of the decision – of the case under the federal officer removal statute, I don't believe appellees will be challenging this court's jurisdiction. I think that's right. So when we narrow the issue for appeal, all of a sudden the appellees have an issue with the jurisdiction. The appeal is – the merits decision that terminated this litigation was that remand order. That's the final order. That's the order that's appealed from that included an award of fees under a federal statute. The way we read Budenich, Gleason, and Corpo is that the unquantified nature of the fees does not divest this court of jurisdiction. I would add that it's somewhat unique here. The award of – the structure here, too, is somewhat unique because under 1447, an award of attorney's fees, as stated by the Supreme Court in Martin, is only allowed when remand lacks any objectively reasonable basis, which is the substantive issue before the court if we get beyond jurisdiction. It's a little unique in that regard where it's not self-executing in terms of award of attorney's fees as it is in, say, Section 1988, where it's just the prevailing party. There's really not much to decide there. So I think given the truncated period of time to research it and then just the uniqueness of this award of attorney's fees under 1447 may give a dearth of case law that's directly addressed. So practical considerations will not create jurisdiction for us. But as I think about this, one of the issues that comes to mind is if you lose here and you go back to the district court and there's a monstrous fee award, are you not coming back? Potentially, Your Honor. I think there is an issue for that. There is an issue that we could return as to the reasonableness of the award. That issue is not before the court right now, whether the amount... I think that's the problem. That's the challenge of this. Well, the matter is... But I think that you still have, from a practical concern, you have the inverse, too, is if the court rules in this favor, then the issue of reasonableness and the issues of the fee award go away. And the matter has now been fully briefed and the parties are prepared to argue it. So I think that from a practical consideration and an efficiencies consideration, if the court's inclined to disagree with the district court, then we don't have to worry about coming back again on reasonableness. And we don't know if we're going to come back on reasonableness. We don't know if the court... It's a hypothetical. We don't know if the district court's award of fees will be unreasonable. You reckoned that if the remand continued to be part of the appeal, that your friends would not have raised the jurisdictional issue. I tend to agree, but Mr. Loney can tell us when it's his turn. But when you waived the remand issue, what does that do to our appellate jurisdiction? Can an appellant remove the basis for appellate jurisdiction by waiving the only final issue that was the basis for the jurisdiction in the first place? Well, we think that the court does have jurisdiction to review the attorney's fees absent the... If there had been two separate orders, the remand order and then an order that says you're entitled to jurisdiction within... I mean, you're entitled to... The other side's entitled to fees within 10 days provide an outline of your fees. That you contend the second order that I just outlined would have been appealable? Perhaps not, Your Honor. Perhaps in that scenario that the independent order that you're talking about may have not been appealable at that point because we weren't appealing the merits. But here, the award of attorney's fees is intertwined with the merits. The order appealed from was the final order. And again, I think there's a real concern under Budinich is that if you were to do that, and I think there's a concern. I haven't really thought that through, but there is a concern that if you don't appeal that order... I mean, we're dealing with an order... We're not dealing with that situation. We're dealing with an order where the attorney's fees award is intertwined with the merits. Well, I assume what you're about to tell me is that it's a double-edged sword, or maybe you're between a rock and a hard place depending on where you are. Because you have an argument on one side, you're too early, and then when you come back later, you're too late. But doesn't BP address that, the Supreme Court's recent decision? That is, doesn't the Supreme Court... It has the first part of the opinion that says, all right, when we say orders... When Congress says orders, when a rule or a statute says order, it means orders and that includes everything in. But then there's a section that specifically deals with fees. And it says fees and cost awards are treated as collateral to the merits and are independently appealable. Doesn't that address your concern? That is, it's not too late for the fee award. And they say Budenich. Uh-huh. I don't know that it does. I don't know that it does. I mean, Budenich is the case at issue. And there is a concern of the jurisdictional trap that we brought forth in our supplemental briefing that Your Honor recognizes, is that if we wait, they're going to say, you're too late. The award of attorney's fees was part of the merits decision. That merits decision, time to appeal has expired. The fact that it hasn't been unquantified under Budenich, under this court's decision in Corpo and Gleason, the unquantified nature of it doesn't toll it. You had to file it. And then, you know, there's, well, it's premature now that you've... So you are. I mean, I think that's the concern here, that we're caught between a rock and a hard place. But I do think that, you know, there is a path to jurisdiction. I think Budenich and I think Gleason and I think Corpo provide this corporate jurisdiction. I mean, parties narrow issues for appeal all the time. And, you know, we initially had challenged the court's remand decision as we could under 1447D because this is a federal officer removal. We wouldn't normally be able to challenge remand. But because this was a federal officer removal remand issue, we did challenge it. We decided to narrow it to the attorney's fees because we went back. And quite frankly, we won in state court. So there really wasn't much left to challenge. We won the case in state court, thereby, you know, in a way, mooting that issue. The appellees are trying to revive it. Let's get to the merits. But back to jurisdiction, we gave you very little time to do this. It was over the Easter weekend. So if either of you want to do a supplemental brief on this, you know, go ahead. I would appreciate it. Yeah, I apologize for not being as up to speed, especially the timing. But I do think on the merits, I mean, the standard that the Supreme Court adopts in Martin is dispositive. It's objectively reasonable, not subjective. And the problem with the district court's opinion is it just really disagreed. It awarded attorney's fees based upon a mere disagreement with Sheriff Herron's basis for removal. And that's not enough. I mean, otherwise it becomes a subjective standard, and it becomes the standard that Martin rejects, which is essentially you're presumptively entitled to attorney's fees on remand. And if we look at the cases in which this court has either affirmed an award of attorney's fees or reversed it, there's a common thread. It's when removal was not – where removal occurred, while it might not have been totally frivolous, it was nonetheless very close, where removal violated a well-settled law, or removal contained some sort of procedural defect. Some cases illuminating this, the legal women voters case where the court affirmed an award of attorney's fees because it was procedurally improper under state law, and also untimely. Lot v. Duffy, where it was a remand on the second time, meaning that the court had already returned it to the district court. Can you speak to the 14 – I think of it as the first remand, removal petition with the 1441 site, how quickly after the county notified you of its non-consent you filed the amendment? Within a day. I think even less than a day. It may have been the same day, Your Honor. In Kislak, it affirmed an award of attorney's fees because the removal violated the well-pleaded complaint rule. And this court has also added that attorney's fees awards on removal are not warranted when you have an unsettled area of law or a novel area of law. And all of this is somewhat consistent with the Seventh Circuit's rationale on this, which is the test for whether removal is not objectively reasonable in the Seventh Circuit is when it violates clearly – case law clearly forecloses removal. We don't have that here. As far as we know, this was the first case of its kind anywhere in the country where a litigant sought to challenge a state officer's 287G agreement and sought to enjoin that state officer from executing federal immigration law enforcement functions. The gist of the claim, I think, is not execution or performance of the agreement. It was his authority to enter into it in the first instance. Do you think that's right? And I do see I'm out of time, but if I may. Yeah, that's the epitome's argument is that, well, you know, you didn't have federal officer removal because it was a state law claim. So what? Whether a federal officer can remove a matter to state court does not hinge on whether the claims asserted by the litigant are state court claims or federal claims. I mean, often they are state court claims that are asserted against a federal officer, and that's why you're in state court. The issue on federal officer removal is, under the four-part test that this court has rated on numerous occasions, is whether there's a person, whether they're acting under authority of the United States, its agencies or its officers, whether the defendant is performing conduct that is for or relating to an act under the color of federal office, and whether the defendant can raise a colorable federal defense. On that second element, what was the federal hook for that second element? Because anything, they weren't challenging what Sheriff Harriner's deputies could do under state law. They were only challenging what he could do under federal law. And under U.S. v. Arizona, we know that state officers independent of 287G cannot engage in federal immigration law enforcement functions. The only way they can do that is by having authority delegated them by the Department of Homeland Security under 287G. So they were thrusting at the heart of that relationship. They were saying, you cannot conduct those federal duties under federal law that are delegated to you by the Department of Homeland Security. That, in and of itself, creates a colorable claim that Sheriff Harrin was a federal officer. It's our contention that the moment he signed that agreement, anything he did pursuant to that agreement, he became a federal officer. I mean, this court has applied federal officer removal broadly. He was a federal officer when he signed it. Correct. When he signed it. Was he a federal officer when he signed it? Not anything he did right after. Did he do it at the direction of somebody? Did he sign that at the direction of someone in the federal government? He signed that as a state officer. Right. And, again, I agree. There's reasonable arguments, and that's why the district court ultimately remanded the case. The district court disagreed with us on our basis for removal under the federal officer statute. It's not whether the district court disagreed. It's whether it was objectively unreasonable for Sheriff Harrin to take the position that he did, that he fell under the federal officer removal statute as broadly construed by this court on multiple occasions. I see I'm out of time, but thank you. Thank you. So would we be talking about jurisdiction if remand were still part of it? Good morning, Your Honor. Had we noticed that issue at the outset, and it's embarrassing that we hadn't, the answer is no. Under this court's decision in ASTM, I think the right result, regardless of whether the remand was still in play here, is to dismiss the non-final fee order and remand that back to the district court to finish its work. Because, like, ASTM, in that line of cases that is sort of discussed in that decision, most or all of them involve sort of underlying, I kind of think of them as ancillary proceedings and fee awards and those, and the distinction between an award between the direct parties who are still in the case and, like, whether it's an indemnification action or coverage under a contract. I'm not sure that that line tracks onto this as well as just looking at 1291 and what we've said in other fees cases about 1291 and what BP says about reviewing the whole order. I think that's right in part, Your Honor. The 1291 is primary here. If an order, whether it's contained in the same document under the same caption as the remand order or not, an order has to be final in order for it to be reviewable by this court. As Judge Montgomery-Reeves pointed out, if Judge Sanchez had just issued two different orders on the same day, I don't think we should be having a different conversation. Each action by the district court has to be independently final and reviewable. That's not just what ASTM stands for, but when we talk about situations decided under Section 1442A1, or I'm sorry, decided under Section 1447, we have several examples of a remand order that is not independently reviewable under 1447D, and yet the court still takes up the fee order that's outlined in the same document, right? So in all of those cases, the question of fees is intertwined with the merits of the remand decision, and for the exact reasons that Mr. Zimbalong articulated, right? But if the reviewability of the fee piece was tied to whether the underlying remand order was reviewable or not, Martin never would have made it out of the district court. That was a federal question case, right, which means under 1447D, the remand was not reviewable. In the same order, the district court, or in the same document, the district court further ordered that fees were not warranted. So the plaintiff in that case was able to appeal the fee determination, even though the remand decision that was intertwined with the fee issue was not itself reviewable. So the Supreme Court and this court has always treated the remand issue as separate from the fee issue for immediate reviewability determinations. The Inselberg v. New York Giants case is exactly the same thing. What do you do with the Supreme Court's VP decision that says and instructs us to look at the order itself? How do you distinguish the, you know, how do you distinguish that case? Yeah, I think a fair reading of that case, Your Honor, is that it's reading 1447D and the order remanding the case as a provision that speaks to the reviewability of remand issues. And so the order remanding the case has baked into it all of the removal and remand issues presented to the lower court. But you don't appeal issues, right? You appeal orders. Exactly. And this order, when the notice of appeal was filed, was it appealable, right? Because it had both the remand and the fee. The remand order was appealable. Our position under ASTM, now that we're digesting it, is that the non-final fee award was not reviewable, even if you're looking at the remand decision. So is your position, even if it is in one order, it's really two orders? Correct. It's two rulings, Your Honor. And this court has always treated those two rulings as separate matters for the purposes of finality under 1291. The order was properly appealed at that moment to us, and that order is on appeal now. What do we make of that? I mean, notwithstanding the fact that the argument, the issue that created the basis for appellate jurisdiction has been now waived. Yeah, I would say, Your Honor, that the order, the remand order, is not on appeal anymore. That's why we're here. That's why we've asked for dismissal of the appeal, because all that's left is a non-final ruling. The order lays it out as first ordered remand of the case, then further ordered that fees are to be awarded, and further ordered a schedule for us to submit a fee petition and response, which are still pending. I mean, that underscores the rationale for why it makes sense to do it this way. Again, this is in terms of procedure and whether there are two orders that independently have to be reviewable under 1291. This is indistinguishable from ASTM. It's also the same as the Inselberg case, that appellant's site, which is you've got, I can give you the Westlaw site for the district court's order in that case. It's 2005 Westlaw 194-1653. Just like, I'm sorry, that is the, that's the citation for the ASTM order, right? And just like Judge Sanchez's order in this case, there's one document, first ordering a judgment on the appealable final merits ruling, further ordered fees on this litigation, and further ordered a schedule to submit applications. And just like the appellant in this case, the appellant in that case appealed before the fee petition was filed. This court reviewed the judgment, the appealable part, the appealable order within the order, I guess, capital O and lowercase o maybe we could use. And what was further ordered, this court held, was not reviewable because it was not final under 1291. The fee petition was still pending, just like in this case. And the result, even in a case where the merits order was still before this court, the result was on the non-final fee petition to dismiss the appeal to the extent it dealt with a non-final issue. So this goes back to your original question, Judge Porter. Had we noticed this from the very beginning, and even if the appellant hadn't abandoned its review of the remand decision, we still would have argued for the same result in ASTM. Again, if the appealability of a non-final fee award rose and fell with the reviewability of the remand decision under 1447B, then Martin never gets out of the district court, Inselberg never gets out of the district court, Legal Women Voters never gets out of the district court. Those are all federal question cases where the remand order was not reviewable, and yet the fee order was, and they came in the same document. Let's talk a little bit about the fee part, if you have the substance. Thank you, Your Honor. In your remand motion briefing, there was a fair amount of emphasis on the well-pleaded complaint rule, which doesn't apply. Correct. So we're in agreement there. And then the district court's opinion says, quote, the focus is on plaintiff's claims, which seems to me to be pretty close to applying the well-pleaded complaint rule in a way that's problematic. We're thinking about if we get to the substance on abuse of discretion, legal errors, factual errors, and looking at what went into it. How is that not just a straight legal error? First, Your Honor, I'll address the reasons why our remand motion included even reference to the well-pleaded complaint rule, which, as Mr. Zimlong stated in response to your earlier question, Your Honor, there was an amended notice. I get that it applies to the 1441. And that was out a day within. It was less than a day by my look at the docket. And then you're moving to remand the operative petition, which is a federal officer removal petition. And there's, I think, at least three pages of well-pleaded complaint rule discussion in the briefing, which the district court seems to have followed. I'll note, Your Honor, that it was not an error for us to argue in the first instance, well-pleaded complaint rule, because even the amended notice of removal, it only added the federal officer removal theory. It kept in the 1441 theory. So what we were responding to in the motion. I think it says as a venue basis. I mean, I know it's cited, but in any event. I mean, at appendix 084, they still argue federal question removal even after. We're in agreement that it doesn't apply. Yeah, it ultimately did not apply. But our brief referred to well-pleaded complaint rule because there was the appellant hadn't abandoned that issue until they responded to our remand. And at that point, we're now solely in federal officer removal. And so I will agree with you on that, Your Honor. I'm sorry for even fighting it this far. But the issue, though, the reference to the focus on the plaintiff's claims, is still relevant in the federal officer removal context. Because the focus under this court's precedent and under the Watson test is whether the act complained of. Whether the claims in the plaintiff's complaint are directed at activities undertaken while the defendant was acting under federal direction guidance or orders. And so the focus still has to be on what is pled here. Whether the claims themselves have to do with anything the defendant did. Again, I emphasize while or when. To me, I would put a lot of weight on those three options. The guidance one. And then there were some statutory arguments about whether even executing the agreement was done under the guidance of 287G. And so G1, there's an argument that in order to enter into the agreement, one prerequisite is that the attorney general has to have determined past tense the political subdivision to be qualified. There's an argument under G2 that before as a prerequisite to the execution of an agreement, the state subdivision has to have, quote, received past tense adequate training. So there were some statutory arguments that there had to be significant federal, state-federal interaction and guidance before the thing was even executed, no? Well, we can only assume that there was state-federal interaction before the thing was executed. But it was not at a time when Sheriff Howard was taking any direction or guidance in terms of execution of his duties from any federal officer. I think we heard that admission during my friend's opening argument. So the issue isn't whether there's some sort of encouragement or light guidance to, you know, pitch that you should sign this 287G agreement, which, of course, does involve some sort of interaction. Even the signing of a contract, this court has recognized the mere existence of a contract with the federal government is not enough to trigger federal officer. But a private contract without federal statutory prerequisites, I think, is different when I look at G1 and G2 and some of the other things that on this record we have to assume happened before the agreement was executed, that there was guidance. There was training. There was a determination by the attorney general that they could enter into the agreement. Actually, I don't think it's true, Your Honor, that there had to have been or was any training prior to entering into the agreement. I think there's a requirement. Because G2 have received assents. Well, it's in the record here that Sheriff Harron had received no training. In fact, he argued in response or in support of his standing arguments that he had actually undertaken no activity in terms of federal immigration enforcement, that he had not yet done anything under acting under this agreement. And on remand, for what it's worth, it was a key feature of the arguments that Sheriff Harron made on remand, which was these plaintiffs shouldn't be here complaining about anything because I haven't done anything. I don't have to do anything. I can still do whatever I want. I can still refuse direction from ICE. And I haven't started implementing it. And so I don't know why we have a case here. So according to Sheriff Harron, and now that agreement has been canceled, so according to Sheriff Harron himself, he never acted under ICE's direction or guidance. Now, he might have been encouraged to sign an agreement, which, by the way, 287G itself, alongside all of the provisions your Honor cited, also has carve outs for authority under state and local law. With respect to, quote, such function, not with respect to that carve out that you're referring to refers to the federal function, not the authority to enter into the agreement. I think it's that the federal government has the authority to enter into these agreements with local law enforcement agencies to the extent consistent with local and state law. To perform functions and to the extent, quote, such function is consistent with state or federal law. And in this, if we got to the merits here, isn't it the case that as long as what I just said isn't crazy, the fee award was not appropriate? As long as what you said isn't crazy, then they might have an argument under the acting under prong. Something that we have not discussed, which is equally fatal to both the argument below and the argument here, is that the appellant hasn't even mentioned the colorable federal defense prong. And as the Supreme Court held in Mesa versus California, that is an indispensable prong. There has to be a colorable federal defense, not just procedural defense. I cited Grable and Sons, which is one way to invoke arising under jurisdiction. That's in both removal petitions. There's a case in front of the Supreme Court right now with a Grable and Sons removal on that prong. That is a federal question case, Your Honor, though. But Grable can be used to present a federal defense in a removal context. Maybe so, but they did not do so here. They cited Grable, but they did not assert a colorable defense under Grable. The statute in the Supreme Court case is also based on a statutory interaction with the issue in Michigan. Yeah, I understand Your Honor's arguments. These were not the appellant's arguments, either below or here. I mean, this was a half-baked removal and a half-baked appeal. And to leave the panel to do the appellant's homework is not exactly how reversal is supposed to work. I'm not doing any homework. These are the cites in the removal petition. They say generally to 287G, but they do not make any of the arguments that Your Honor is making. Under Dowdell, even citing to this court's decision in Dowdell, even citing to the appropriate case law and authority without articulating what under that case would have been a winning argument is not enough to overcome the party presentation principle. There's a huge party presentation principle in this case. If we're going to supply the appellant with their arguments for why removal was colorable here, they've abandoned those arguments. They've made none of those arguments in their brief here, notwithstanding some fleeting citations. So there is no colorable argument that Sheriff Herron was acting under any federal authority when he decided to do something on his own accord under this court's decisions in Attorney General of New Jersey versus Dow Chemical and under Moore. Things that a defendant does on their own accord voluntarily do not trigger federal officer removal. And even so, he has not articulated a colorable federal defense and doesn't even mention colorable federal defenses before this court in his brief or in his argument here. So, I mean, I understand Your Honor's points. And had they been made below, we might have been having a different conversation. But they weren't made below. And all that was argued below was that this case implicates some complicated issues over. Between 287G and the interstate compact and the Pennsylvania Constitution. And maybe I put some finer points on it here, but that was the thrust of what was going on. I honestly think it's an understatement to say that Your Honor put some finer points on it. What the appellants argued here, every time they took the opportunity to articulate what was colorable or unsettled about the law on removal, instead of arguing the law on removal, they argued that it is unsettled, at the very least, the question of whether DHS is authorized under 287G to enter into agreements with sheriffs generally. This case is not, and this appeal certainly is not, has never been about the viability of 287G as a tool. Whether law enforcement agents are able to engage with ICE in this way, if they're authorized to do so under federal and state law. I'm sorry, under state and local law. And so to say that it is an unsettled area of law because courts haven't had a chance to suss out the applicability of 287G, is really the straw man that Judge Sanchez appropriately saw through when he ordered remand and awarded fees. Regardless, Your Honors, I see my time is up. We would ask again that... I have one more question. I'd like to hear you discuss the interaction between the abuse of discretion standard and the objectively reasonable standard. So suppose that we agree that the remand was, the removal was improper, but nevertheless wasn't objectively unreasonable. Does the district court have the discretion to conclude otherwise? I think I would reframe sort of the sequencing there. The district court had the discretion to conclude that there was no objectively reasonable basis for making these arguments. Now, abuse of discretion, obviously, one way that a district court may abuse its discretion is by making an error of law, right? And so if the district court just got it wrong on the remand question, on the federal officer removal question, then that would be abuse of discretion. That's an error of law. But that's not an error of law that the appellant has pointed to. Once there is... Once the judge has made his decision, he has the discretion to look at the circumstances to determine whether it was reasonable to even take a shot at this argument.  And so that decision is reviewed for abuse of discretion. And I think that's the approach that this court took in Bell v. United Princeton Properties. That you can't sort of backdoor into de novo review of the entire fee award by saying that the court might have gotten the law wrong. Objectively reasonable is more discretionary than de novo. Thank you. Thank you, Your Honors. Just getting back to the merits question, I think that the court's colloquy with myself and my colleague shows that the district court was wrong in saying that there was no objectively reasonable basis to remove. Because these are close calls. There's reasonable arguments that everyone in this courtroom has made on both sides. And especially when it comes to an unsettled area of law. And it is easily more than enough to say that it's not crazy. And I think that, as to the merits, is the reason why the district court erred. I wanted to address just briefly the acting underpun. There was some discussion about that. And I point to the court's decision in PAP, which we discussed at length in response to the remand petition. In this court's decision in PAP, this court stated, quote, it is sufficient for the acting under inquiry that the allegations are directed at the relationship between the defendant and the federal officer or agency. One of the things we argued strenuously as to why federal officer removal was appropriate, the complaint thrust at the heart of the relationship between Sheriff Harron and DHS. And it seemed to terminate that relationship and interfere with that relationship. And therefore, it made federal officer removal appropriate, or at least meeting that acting under prompt. It certainly made it reasonable. I certainly think Sheriff Harron was acting reasonable by interpreting PAP in that way. Regarding, wouldn't the other side say, what relationship? He didn't have any authority to have any relationship. Like, what relationship are you talking about? The relationship, the plaintiff's concern in the case was the moment he signed that agreement, he was going to go out and commit these host of horrors by engaging in this racially profiling. He was going to interrogate people. He was going to snatch people off the street, as Mr. Looney said. He was going to snatch them right up off the street. That's what he wanted the injunction for.  That happens later. I get all that. Right. That was their concern. We're saying, OK, wait a minute. If you think, if that's your concern, if that's what the complaint says, and you're claiming that his relationship with the federal agency is going to cause him, he's not going to do that. He wasn't doing it before. But lo and behold, now that he signed the agreement with DHS, he's going to engage in this host of horrors. We need to terminate that relationship because without terminating that relationship, that's what he's going to do because DHS is going to direct him to do that. Yeah, I think, but isn't the gist of it is, does he get to have that relationship in the first place? Does he get to enter into that contract or is the whole thing ultra-virus? And ultimately, the state court concluded that he did have the authority and we wanted the state court level. Yeah. But the question was, again, in a federal office, Judge, to answer your question, Judge Porter, whenever we're dealing, often when we're dealing with federal officer removal issues, that's a state court issue. Did he have the authority under state law to do it? Well, that doesn't, the fact that there's some state law issue doesn't make federal officer removal any less applicable. I mean, if you have a state tort claim, it has nothing to do with federal law per se, as long as there's a federal. Different, like you got a state tort claim, right? Like you created X product, that product harmed the environment. That's the tort claim. And then the federal officer removal question is, well, I created the product at the direction of the federal government. The government made me create Agent Orange or whatever the question is. Isn't this fundamentally different? The question here is, could you enter into the agreement with the government in the first place? In what capacity were you acting when you signed the agreement? Again, I don't want to collapse this argument into a merits argument because for us to be successful in the attorney's fees award, it's not that the court got it wrong. They should have kept the case in federal court. Is there a culpable argument? I think this whole discussion this morning forecloses that issue. It indicates that there are good faith arguments. There are meritorious arguments all around. This is an unsettled issue. It doesn't fit neatly into any of the boxes. And if this court were to allow the attorney's fees award to go away, Congress intended that federal officer removal be broad. I mean, this court is interpreted broadly. One of the arguments we make is if you just look at it the way the district court did, you're going to chill removal. I mean, to get attorney's fees, it's not just you win, you get attorney's fees. It's not the prevailing party. It's that the removal was objectively unreasonable. I see I've greatly expired my time, but thank you. Okay. If you choose to file a supplemental brief on the appellate jurisdiction issue, can you get it to us within like 10 days? Thank you. Okay. All right. Thank you.